# MoloLamken

Steven F. Molo
MoloLamken LLP
540 Madison Avenue
New York, NY 10022
T: 212.607.8170
F: 212.607.8161
smolo@mololamken.com
www.mololamken.com

April 25, 2014

The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Suite 660
New York, New York 10007-1312

BY FACSIMILE to (212) 805-6382



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/2/14

Re: *NES Financial Corp. v. JPMorgan Chase Bank, N.A.*, No. 11-cv-3437 (S.D.N.Y.)

Dear Judge Marrero:

We write on behalf of plaintiff NES Financial Corp. ("NESF") pursuant to this Court's April 16, 2014, order permitting a letter brief on NESF's entitlement to indemnification. As explained below, the Share Purchase Agreement allows NESF to recover its attorney's fees and litigation expenses resulting from any breach, whether or not NESF suffers any other damages – consistent with established New York precedent. This Court found that JPMorgan breached that agreement by concealing material information about its disqualification risk. Although the Court found that NESF had not sufficiently proved any other damages from the breach, it was still a breach, so NESF is entitled to indemnification. Nothing in the Second Circuit's mandate precludes the Court from ruling on that issue now.[1]

**NESF Is Entitled to Indemnification for Any Breach of the Share Purchase Agreement**

Section 8.1 of the Share Purchase Agreement provides that "JPMorgan shall indemnify and hold harmless [NESF] from and against any and all Liabilities arising out of or caused by, directly or indirectly, . . . *[a]ny material breach of the representations or warranties* made by JPMorgan." PX543 § 8.1 (emphasis added). The agreement explicitly defines "Liabilities" to include "Court costs, costs of investigators, *fees and expenses of attorneys*, accountants, financial advisors, consultants and other experts, and *other expenses of litigation*." *Id.* § 1.1 (emphasis added). Under the plain terms of that provision, NESF is entitled to recover its attorneys' fees and other litigation expenses whenever it proves a breach of the Share Purchase Agreement – whether or not it suffers any other damages.

That provision applies here. JPMorgan made detailed representations and warranties to NESF in the Share Purchase Agreement, including a promise that there was "*no reasonable*

---

[1] NESF interprets this Court's order to call for submissions only with respect to indemnification, not the true-up. NESF will continue to attempt in good faith to negotiate a resolution of the true-up without the Court's involvement once the Court rules on its entitlement to attorney's fees.

*basis* . . . for any threatened investigation . . . against [JPEX] . . . that could lead to an order . . . disqualifying" it as a qualified intermediary. PX543 § 3.10(a) (emphasis added). As this Court found, JPMorgan breached those promises by concealing information about JPEX's disqualification risks—risks it had been unable to resolve despite spending hundreds of thousands of dollars over several years on advisors such as PricewaterhouseCoopers, Skadden Arps, and Deloitte. Dkt. 88 at 18-21. By withholding that information, the Court found, JPMorgan concealed *"material information* that a reasonable purchaser of JPEX would have wanted to know," and "JPMorgan *should have disclosed* this information to NESF." *Id.* at 36 (emphasis added).

To be sure, this Court went on to hold that NESF had offered "insufficient evidence of any damages it may have suffered" by reason of that breach. Dkt. 88 at 21. The Second Circuit affirmed that holding on appeal. Dkt. 93 at 4. Under the Share Purchase Agreement, however, those findings do not control NESF's entitlement to indemnification. NESF is entitled to fees or expenses "arising out of or caused by, directly or indirectly, . . . [a]ny material breach" – whether or not it suffers any additional damages from the breach. PX543 § 8.1.

NESF's attorney's fees and litigation expenses plainly "ar[ose] out of or [were] caused by, directly or indirectly," JPMorgan's breach of the Share Purchase Agreement. NESF's CEO Michael Halloran testified at trial that he would not have purchased JPEX had he known about its legal risks. *See* Tr. 50:18-54:6, 84:25-85:15. NESF's litigation expenses were thus a direct result of JPMorgan's decision to conceal that information in order to close the deal. The fact that NESF did not prove up the amount of its legal fees at trial is irrelevant; Second Circuit precedent provides that fee awards should be resolved after trial even when they arise out of a contract. *See McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1316 (2d Cir. 1993) ("The amount of attorneys' fees owed was not an issue of fact that required proof at trial; it was an issue for the court to review after a finding of liability.").

New York courts have not hesitated to award attorney's fees where a contract so provided, despite the plaintiff's failure to recover any other relief. For example, in *Cornell Holdings, LLC v. Woodland Creek Associates, LLC*, 882 N.Y.S.2d 586 (3d Dep't 2009), the court reversed an award of lost profits – the only damages awarded – but refused to reverse a fee award under a contractual "prevailing party" provision. "Notwithstanding our conclusion that the damage award itself is not sustainable, we will not disturb Supreme Court's award of counsel fees to Woodland Creek. Woodland Creek prevailed on the issue of liability for breach of contract thus entitling it to reasonable counsel fees under the real estate contract." *Id.* at 588.

Likewise, in *Ross v. Sherman*, 944 N.Y.S.2d 620 (2d Dep't 2012), the court reversed a denial of fees under a similar provision requiring payment by the "losing party." The plaintiffs "failed to submit sufficient evidence to demonstrate actual damages as a result of the defendants' breach of contract" and thus recovered only nominal damages. *Id.* at 621. Nonetheless, "as the plaintiffs prevailed on the issue of liability for breach of contract, they were entitled to a reasonable attorneys' fee." *Id.*

JPMorgan insists it should not have to pay fees because NESF "lost" the case. Of course, given that JPMorgan was judicially determined to have concealed material information in an $8 million transaction that it had an obligation to disclose, it can hardly claim unqualified victory.

- 2 -

But regardless, the Share Purchase Agreement's indemnification provision does not turn on whether NESF "lost" or "won" the case – there is no "prevailing party" language. The only requirements are (1) that JPMorgan breached the agreement; and (2) that NESF paid fees or expenses as a result. Both requirements are met, so NESF is entitled to indemnification, regardless of its degree of success by any other measure.

JPMorgan has also argued that the indemnification provision is inapplicable because, under New York law, such clauses are presumed to apply only to third-party claims. That presumption, however, is rebutted where the clause's text shows an intent to cover inter-party claims. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177-79 (2d Cir. 2005). There is ample evidence of such intent here. *See* PX543 § 8.3(a) (requiring notice "[w]ithin five (5) Business Days after the Indemnitee receives written documents underlying the Indemnification Matter or, *if the Indemnification Matter does not involve a third party action, suit, claim or demand*, promptly after the Indemnitee first has actual knowledge" (emphasis added)); *id.* § 8.3(b) ("*If* a third party action, suit, claim or demand is involved," indemnitor may assume defense (emphasis added)); *id.* § 8.4(d) (damages exemption depends on whether matter involves "a final judgment against such party by any third party"); *id.* § 8.5 (exclusive remedy). Courts have found the third-party presumption rebutted by language far less clear. *See, e.g., In re Refco Sec. Litig.*, 890 F. Supp. 2d 332, 344 (S.D.N.Y. 2012) ("Indemnification provisions that specifically distinguish third-party claims from interparty claims indicate an intent to cover claims between the parties . . . ."); *Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 145-46 (S.D.N.Y. 2004) (similar); *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 651-56 (S.D.N.Y. 1999) (similar).[2]

This case thus falls squarely within the plain text of the indemnification provision. JPMorgan breached the Share Purchase Agreement, so NESF is entitled to recover any attorney's fees or other litigation expenses "arising out of or caused by, directly or indirectly," that breach, regardless of any other damages. PX543 § 8.1.

### The Second Circuit's Mandate Does Not Prohibit the Court from Ruling on This Issue

Contrary to JPMorgan's assertions, nothing in the Second Circuit's mandate precludes this Court from resolving the indemnification issue at this point. "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" *United States v. Ben*

---

[2] The Share Purchase Agreement's definition of "Liabilities" confirms the provision's broad scope. That definition imposes a third-party limitation on only one type of liability – "punitive damages that are awarded to third parties." PX543 § 1.1. No such limitation appears next to the other items on the list. *Id.* JPMorgan reads the phrase "that are awarded to third parties" to modify *all* items on the list of "Liabilities," but that is not a plausible interpretation. Several items – such as "debts," "obligations," "Taxes," and "fines" – are not ordinarily referred to as "awarded to third parties." And if the drafters intended JPMorgan's meaning, they would have ended the list with "any incidental, consequential, or punitive damages that are awarded to third parties" rather than "any incidental or consequential damages and any punitive damages that are awarded to third parties," as there would be no reason to list punitive damages separately.

*Zvi*, 242 F.3d 89, 95 (2d Cir. 2001). Here, neither the letter nor the spirit of the mandate fore-closes consideration of this issue.

First, nothing in the mandate's literal terms forecloses the issue. The court of appeals did not address NESF's broad claim for attorney's fees. It did state that, "[b]ecause it appears that the [district] court has not already addressed the issue, if the court concludes that NESF is entitled to relief on its 'true-up' payments claim, it should also consider whether NESF may be entitled to indemnification from JPMorgan under the SPA for fees and expenses related to this portion of the litigation." Dkt. 93 at 8-9. That language *requires* this Court to address indemnification for true-up if NESF prevails on that claim. But it does not *prohibit* this Court from addressing indemnification on any other matters. The mandate is simply silent in that regard.

Courts have routinely held that an appellate court's mandate does not forbid considera-tion of matters that it merely fails to mention. *See United States v. Bryson*, 229 F.3d 425, 425-26 (2d Cir. 2000) ("We concluded that the record and the findings in the district court were wholly insufficient to support a downward departure for an extraordinary rehabilitation. The terms of the remand . . . did not preclude a departure based on intervening circumstances."); *J.L. Spoons, Inc. v. Ohio Dep't of Pub. Safety*, 509 F. App'x 464, 470-71 (6th Cir. 2012) (mandate reversing decision invalidating rule did not foreclose as-applied challenge on remand because court did not express any view on that claim); *Thompson v. Colorado*, 60 F. App'x 212, 215-16 (10th Cir. 2003) ("[W]hile a district court is 'bound to follow the mandate, . . . a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal.' ").

Nor would consideration of the issue violate the spirit of the mandate. NESF has pursued its claim for attorney's fees at all stages. It did so in this Court. *See, e.g.*, NESF Pretrial Brief at 15 (Aug. 24, 2012) ("NESF is also entitled to its attorney's fees and litigation expenses. SPA § 8.1(a)."). And it did so at even greater length on appeal. *See, e.g.*, NESF Opening Brief at 45-46 (Aug. 16, 2013) (2d Cir. No. 13-7 Dkt. 111) (provision "require[s] payment of attorney's fees . . . whether or not other damages are awarded"). Despite NESF's having pressed this issue at all stages, no court has ever ruled on the claim. In these circumstances, it is unreasonable to attrib-ute to the Second Circuit an intent to foreclose this Court from considering the issue. Rather, given the Second Circuit's silence, the more reasonable inference is that the court meant to leave the matter open for this Court on remand.

Accordingly, NESF respectfully requests that the Court enter an order confirming NESF's entitlement to all attorney's fees and other litigation expenses arising out of or caused by, directly or indirectly, JPMorgan's breach. NESF will then meet and confer with JPMorgan over a schedule for submission of evidence establishing the amount of indemnification due. Of course, should the Court wish to hear evidence or argument on this issue, we would be prepared to proceed accordingly.

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by

*plaintiff*

**SO ORDERED.**

5-2-14
DATE

VICTOR MARRERO, U.S.D.J.

Respectfully submitted,

*[signature]*

Steven F. Molo

- 4 -